EXCELSIOR IMPORT ASSOCIATES, INC.

v.

UNITED STATES.

C.D. 4726; Court No. 76-11-02563.

United States Customs Court.

Dec. 13, 1977.

Shaw & Stedina, New York City (Charles P. Deem, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Chief, Customs Section, and Laura D. Millman, Trial Atty., New York City), for defendant.

BOE, Judge:

The merchandise in question in the above-entitled action described as women's cotton gauze shirts was imported from India and entered at the port of New York on July 16, 1975 and July 31, 1975.

Upon liquidation the merchandise was classified under item 382.00, TSUS, providing in pertinent part:

Schedule 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

Part 6.—Wearing Apparel and Accessories

Subpart F.—Other Wearing Apparel

\* \* \* \* \* \* \*

Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented:

382.00    Of cotton .............. 35% ad val.

Plaintiff, however, contends that the merchandise properly should be classified under item 382.33, TSUS, providing in pertinent part:

Other women's, girls', or infants' wearing apparel, not ornamented:

Of cotton:

\* \* \* \* \* \* \*

Not knit:

\* \* \* \* \* \* \*

382.33    Other ............ 16.5% ad val.

Counsel for the respective parties by way of written stipulation have agreed: (1) that the shirt appended thereto, received in evidence as Joint Exhibit 1, is a sample of the merchandise at issue; (2) the shirt has a right and left breast pocket on each of which a tuck, approximately one inch in width, has been sewn extending from the top of the pocket to the bottom thereof; (3) the tuck is created and made fast by a row of stitches sewn underneath the tuck and vertically along the center of the pockets.

The sole issue to be determined herein is whether this "tucking" causes the merchandise in question to be "ornamented" within the purview of item 382.00, TSUS.

In determining whether the merchandise in question has properly been classified as "ornamented," our consideration initially is directed to schedule 3, headnote 3 of the Tariff Schedules of the United States (TSUS), which provides:

3. For the purposes of the tariff schedules—

(a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

\* \* \* \* \* \*

(iii) lace, netting, braid, fringe, edging, *tucking*, or trimming, or textile fabric; [Emphasis supplied.]

At first impression this headnote might be interpreted as providing that textile materials and fabrics containing such additions as "lace," "braid," "tucking," etc. are deemed ornamented *per se* within the purview of the tariff schedules. However, in the case of *Blairmoor Knitwear Corp. et al.*

*v. United States,* 60 Cust.Ct. 388, C.D. 3396, 284 F.Supp. 315 (1968), our court stated at p. 392, 284 F.Supp. at 318):

At this juncture, it is pertinent to observe that while the Headnote to which we have herein referred purports to define the term "ornamented", it does not actually do so. Instead it sets forth the circumstances under which fabrics and articles may be considered to be ornamented, and the types of embellishments which may accomplish that effect. As is evidenced by the introductory language, the emphasis is upon the article to be adorned or embellished, not the substantive matter of what constitutes ornamentation in the first instance.

* * * But it remains to be determined what constitutes ornamentation in the first instance.

See also *The Baylis Brothers, Inc. v. United States,* 60 Cust.Ct. 336, C.D. 3383, 282 F.Supp. 791 (1968), *aff'd,* 416 F.2d 1383, 56 CCPA 115, C.A.D. 964 (1969); *Colonial Corp. of America v. United States,* 62 Cust.Ct. 502, C.D. 3815 (1969). In an attempt to erase any ambiguity which may exist in the term "ornamented fabric," our appellate court in the case of *Rifkin Textiles Corp. v. United States,* 54 CCPA 138, C.A.D. 925, *cert. denied,* 389 U.S. 931, 88 S.Ct. 294, 19 L.Ed.2d 283 (1967), deemed it proper to resort to the legislative history of the tariff schedules. Referring to the Tariff Classification Study, schedule 3, explanatory notes, page 7 (published November 15, 1960), the court quoted therefrom:

Under the proposed definition of "ornamented," textile articles would no longer be assessed with rates of duty derived from paragraph 1529(a) on the basis of concealed, functionless pieces of braid, netting, etc. The rates derived from paragraph 1529(a) would apply only if such materials were used primarily for ornamentation. [54 CCPA at 141.]

Again, referring to the Seventh Supplemental Report of the Tariff Commission, submitted to Congress on August 14, 1963, relating to the use of the term "braid," the court quoted:

* * * The existing requirement that the article merely be "in part of" braid is less exacting. Under the new provision, the braid must in fact ornament the fabric *in an acceptable trade sense.* * * *

[*Id.* at 141. Emphasis added.]

In view of the fact that "tucking" is also enumerated as one of the several methods of ornamentation in subpart (iii) of schedule 3, headnote 3 in the same manner as "braid," a similar standard of interpretation necessarily must be applied to the term "tucking" as has been applied to the term "braid." Thus, as our appellate court has concluded, the relevant inquiry is not whether the particular addition is "ornamental," but rather, whether the addition serves "to make the merchandise an ornamented fabric." *Rifkin Textiles Corp., supra,* at 142. From the foregoing, it is clear that the effect of the "tucking" on the merchandise in question must be of such a nature and character as to render the imported shirts "ornamented textile articles" in an accepted trade sense.

It is well established that the classification of the merchandise in issue by the Customs Service bears a presumption of correctness having evidentiary weight in and of itself. Upon the plaintiff, therefore, rests the burden of establishing by a preponderance of the evidence that the merchandise in issue does not fall within such a classification. *United States v. New York Merchandise Co., Inc.,* 435 F.2d 1315, 58 CCPA 53, C.A.D. 1004, (1970); *Novelty Import Co., Inc. v. United States,* 53 CCPA 28, C.A.D. 872 (1966). In its effort to overcome this presumption and the evidence in corroboration thereof subsequently introduced by the defendant at the trial of the instant action, the plaintiff offered the testimony of two witnesses to establish (1) that the tucking on the merchandise in issue was functional in purpose, and (2) that the tucking did not ornament the merchandise in an accepted trade sense.

Mr. Jules Kraft, president of the plaintiff corporation, and Mr. Mohan Shah, a representative of the Indian company manufacturing the merchandise in issue, testified without further explanation or substantiation that the tucking served to control the fullness of the shirt pockets and to give extra support to the pockets and the upper portion of the garment. In support of the contention that the merchandise in issue was not ornamented in the accepted trade sense, the witness, Kraft, offered his opinion, derived from his experience in selling comparable merchandise, that the tucking did not embellish the garment; that the merchandise in question was neither sold to him nor by him as "ornamented"; that the price he paid for the merchandise in issue possessing pockets with tucking as well as the price he subsequently charged his customers therefor was the same price he paid and, in turn, received for merchandise with plain pockets. Mr. Shah likewise testified that the merchandise in issue was sold by his firm to the plaintiff at the same price as merchandise with plain pockets; that the merchandise was not offered to plaintiff as ornamented nor was the merchandise considered ornamented by the Indian government in the course of its export procedures.

In support of the classification placed upon the merchandise in issue by the Customs Service and to negate the testimony offered by the plaintiff, the defendant offered the testimony of three witnesses. Mr. Sandor Borocz, a garment designer and production consultant, stated that the tucking on the merchandise in issue served neither to control the fullness nor to strengthen the pockets of the shirt. He further testified that only an interlining or a doubling of material would serve to give increased strength to the pockets. Mr. Michael Silverstein, a professor of management engineering at the Fashion Institute of Technology in New York, in turn, testified that stress on a woman's shirt in the breast pocket area is in a horizontal direction. He submitted that the tucking on the merchandise in issue, accordingly, would provide no extra strength with respect to horizontal stress and, in fact, would prove counterproductive in that the stitching would cause the fabric adjacent to the tucking to tear and rip apart.* Although Mr. Borocz testified that the tucking on the merchandise in issue was "poor ornamentation" and, in fact, in his opinion constituted neither a functional nor ornamental purpose, defendant's witness, Mr. Alfred Sloan, a professor of fashion marketing at the Fashion Institute, testified unequivocally that the tucking constituted an ornamentation and that a prospective purchaser would find the merchandise in issue to be enhanced by the tucking on the pockets.

A physical examination of Joint Exhibit 1 by the court, indeed, serves to corroborate the testimony of the defendant's witnesses. Such an examination fails to disclose in what manner the addition of the tuck on the pockets results in added strength to either the pocket or the shirt as a whole. Any functional purpose served by such tucking is difficult to discern. On the contrary, Joint Exhibit 1 clearly evidences that the tucking on the breast pockets produces a visual effect different from that which would be produced by plain pockets. Notwithstanding the intentions of the manufacturer asserted by plaintiff's witnesses with respect to the alleged purpose of the tucking, it is the resulting effect upon the merchandise, and not the intention of the manufacturer, which controls classification. *Colonial Corp. of America v. United States, supra ; The Baylis Brothers, Inc. v. United States, supra.*

Reducing the plaintiff's evidence to its actual significance, it appears that only the individual and somewhat self-serving opinions of its two witnesses, have been offered to overcome the presumption of cor-

---

* Professor Silverstein explained that a cardinal rule in garment construction is never to make the stitching on a garment stronger than the fabric because stress will cause the fabric, rather than the stitching, to tear. This would be the result of the tucks on the subject shirts owing to the fragile, gauzy nature of the fabric.

rectness attaching to the classification of the merchandise in issue in the within action. No testimony, other than the unsupported personal opinion of plaintiff's witnesses, has been offered to indicate that the merchandise in issue, containing the tucking, is not ornamented in any accepted trade sense. The intent not to import ornamented merchandise may be considered relevant only insofar as it may demonstrate the state of mind of the plaintiff—and its officers or agents. Nor can the testimony regarding similar cost and sale prices for shirts with pockets containing tucking as contrasted with plain pockets be determinative as to the basic issue before the court. Likewise, the classification of the merchandise in question by the Indian government in its exporting procedures has no direct bearing upon the interpretation and construction of the Tariff Schedules of the United States—the issue before this court.

 This court, therefore, concludes that the presumption of correctness, with respect to the classification of the merchandise in issue made by the Customs Service and supported by the evidence adduced by the defendant at the trial of the instant action has not been overcome by the plaintiff and that said merchandise was properly classified as liquidated under item 382.00, TSUS.

Let judgment be entered accordingly.